## Unemployment Compensation Division Appointments

PERRY, Special Deputy Attorney General, August 1, 1940.—By your letter of June 4, 1940, you requested this department to advise you whether you were required to confine your appointments for vacancies arising in grades of employment for which lists have been exhausted to individuals whose names appear on other lists of eligibles but of higher grades and classes. In your letter you state that under the law certain lists of eligibles were certified to you and appointments made therefrom. You advise that certain of these lists, largely in the lower salary grades, are now exhausted, although other lists of eligibles in higher salary grades contain names of individuals not yet called or appointed. Vacancies now exist, and from time to time may arise, in lower grades

for which the lists have been exhausted. According to' your letter, your practice in the past has been to fill such vacancies by appointing provisional employes, awaiting the establishment of new lists of eligibles for such positions through the holding of new examinations. You now seek advice as to your right and authority to use "lists of eligibles" certified to you for the higher grades, in making appointments to vacancies existing in lower grades, and for which lower grades no "lists of eligibles" are now available.

Your authority to make appointments and to employ individuals for the administration of the Unemployment Compensation Law of Pennsylvania is found in section 208 of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended by the Acts of May 18, 1937, P. L. 658, June 20, 1939, P. L. 458, and Act No. 9, approved May 16, 1940.

Taken together, these acts comprise the Pennsylvania Unemployment Compensation Law. By this law, the General Assembly has created a statutory civil service status, and has prescribed certain values to accompany that status. But it also, definitely and specifically, has established and prescribed the procedure that must be observed in obtaining or retaining this status and its accompanying rights. These legislative mandates require a strict observance.

By section 208 (*a*) of the Unemployment Compensation Law of 1936, supra, the General Assembly has prescribed that:

"No individual shall be appointed or employed by the department for the purpose of administering this act except as provided in this section."

As part of that established procedure, in section 208 (*d*), the General Assembly requires that:

"The secretary shall by rules and regulations establish classes of employment, composed of all of the various positions to be created, for the purpose of administering this act, and shall divide such classes into a reasonable

number of grades, and shall specify a salary range for each grade. All appointments shall be made at the lowest salary for the grade in which the appointment is made. The secretary may increase the salary of any employe, who has served the probationary period hereinafter required by this act, to not more than the maximum provided for his grade of employment." And again in section 208(e) that:

"The secretary shall prescribe, by rules and regulations, the qualifications to be possessed by persons desiring employment in the various grades of employment in the administration of this act."

We are advised that the secretary from time to time, through rules and regulations, has established classes and grades of employment. By those rules and regulations he described the duties of the respective grades of employment, and prescribed, for each grade, the minimum qualifications to be possessed by an applicant therefor. He identified each grade by a definite salary range. Such rules and regulations are official records, public notice thereof was given, and they formed the basis upon which the various applicants filed applications, were admitted to competitive examinations, and in proper instances had their names certified on lists of eligibles, for the respective grade for which they were qualified for appointment.

In section 208(f) of the Unemployment Compensation Law, the legislature imposes certain requirements upon the applicant desiring appointment or employment in the department. That section requires that:

"Every individual desiring employment under the provisions of this act shall file with the board an application . . . which shall be in a form prescribed by the board, provided that such application shall be the same for all individuals desiring the same grade of employment, and shall be so drawn as to reveal the qualifications as prescribed by the secretary. . . . Such competitive examinations shall be in writing, but in arriving at a

final rating of applicants for such administrative and professional grades of employment as are so designated by the board, the board may take into consideration such experience and personal qualifications as are related to the grades of employment for which applicants are being examined, provided that the same standards shall apply with respect to all applicants in the same grade of employment."

We are also advised that the Unemployment Compensation Board of Review, through its practices, and by its rules and regulations publicly promulgated through official circulars announcing the establishment of positions, the time and place of examination (and in fact printed upon the application itself), required each applicant as a prerequisite to being admitted to examination to "specify [on such application] particularly the positions by number and title . . . for which they desire to be examined." In all instances, the board required of an applicant before admitting him to examination and upon the strength of which lists of eligibles were certified that "a separate application must be filed for each position." And unless an applicant filed such an application, he was not permitted to take an examination, nor was his or her name permitted to be placed on any list of eligibles other than the grade of employment for which such applicant had filed a specific application. For the General Assembly specifically provided in section 208 (*f*) that:

"Upon receiving *such* application the applicant shall be admitted to the next competitive examination *in the grade of employment* which he or she seeks." (Italics supplied.)

And in detailing the method for rating an applicant, the General Assembly prescribed that:

". . . in arriving at a final rating of applicants for such administrative and professional grades of employment as are so designated by the board, the board may take into consideration such experience and personal qualifications as are related *to the grades of employment*

for which applicants are being examined. . . ." (Italics supplied.)

The General Assembly has been equally specific as to the duties imposed by it upon the Unemployment Compensation Board of Review. It prescribed the duties of the board in conducting examinations and establishing ratings thereon, and section 208(*i*) requires that:

"The board shall certify to the secretary for each administrative district, and for the State as a whole, lists of the names of persons receiving a passing mark, and shall rank such persons in the order of magnitude commencing with the highest rating for the specified grade of employment. Such list shall be known as a list of eligibles and shall be valid until the next examination is held for the same grade of employment, but in no event for a period of less than one year, unless no more than two names remain on a list of eligibles, in which case a new examination may be held; but those whose names remained on the list of eligibles shall be retained on the new list for a period of at least one year from the date of their original certification." And again in section 208(*m*) that:

"It shall be the duty of the board to certify to the secretary lists of eligibles for all grades of employment as such lists are requested by the secretary, as soon as practical, and to maintain a sufficient number of names on each of such lists to meet all reasonable requirements of the secretary in making necessary appointments under this act."

In section 208(*j*) of the Unemployment Compensation Law, the General Assembly definitely defines and limits the secretary's power of appointment and details the method to be followed in making those appointments. In that section the legislature requires that:

"The secretary shall make appointments to positions created under this act, and shall fill vacancies as they may occur from the lists of eligibles certified to him by the board, except with respect to positions filled by the ap-

pointment of persons exempted by subsection (*b*) of this section. In making appointments therefrom, the secretary shall select from the three persons ranking highest on the list of eligibles for the grade of employment in the administrative district, or in the State as a whole, as the case may be, the applicant most suitable for the position in the grade of employment for which a vacancy exists, taking into consideration his experience and personal qualifications with sole reference to merit and fitness for the position to be filled."

There can be no doubt of the intent of the legislature in enacting this law. The establishment of the procedure, the imposition of the mandates, evidences that the legislature did not intend, as do some systems of civil service, to permit the use of "comparative lists" in making appointments but rather intended to confine the making of such appointments to those individuals whose names appear on a list of eligibles properly certified for the specific grade of employment to which the appointment is to be made.

In establishing its procedure, the General Assembly constantly uses the term "grade" of employment. In so doing, it intended that term to have a definite meaning, even though no specific definition was contained in the law. As used by the General Assembly, the word "classes" was intended as a general term designating the grouping together of certain grades of employment. Grades of employment, in reality, describe specific positions, and each grade is identified by its respective duties, qualifications, type of competitive examination, list of eligibles, and definite salary range. The legislature intended each such salary grade falling within a general classification of positions to constitute a separate group of positions for the purpose of application, examination, certification of lists of eligibles, and appointments to civil service positions. Such a concept alone explains the legislative requirements in section 208 (*f*) that:

"Every individual desiring employment . . . shall file with the board an application . . . which shall be in a form prescribed by the board, provided that such application shall be the same for all individuals desiring the same grade of employment, and shall be so drawn as to reveal the qualifications as prescribed by the secretary"; and likewise that competitive examinations be in writing:

". . . but in arriving at a final rating of applicants for such administrative and professional grades of employment as are so designated by the board, the board may take into consideration such experience and personal qualifications as are related to the grades of employment for which applicants are being examined, provided that the same standards shall apply with respect to all applicants in the same grade of employment."

Nor can it be said that the several subsections of this law indicate that the legislature intended those provisions to be merely directory. The terms of these subsections clearly indicate that the legislature intended them to be mandatory and intended that you, as the appointing power, observe rigidly those mandates. The legislature in delegating to you the power of appointment with civil service status requires that you do not exercise that power until and unless all statutory provisions regulating those appointments have been complied with. Other than as to promotions, made in pursuance of the legislative requirements, the law contains no justification for you to make appointments with civil service status to a grade other than from the list of eligibles properly certified to you by the Board of Review for that specific grade.

The very fundamental purpose of the civil service provisions of this law is to regulate and improve civil service by establishing a definite system of selecting individuals on the basis of their special qualifications. To exercise a power of appointment contrary to the provisions of the law would result in the nullification of this fundamental purpose of the law. Such a usurpation of power would

imperil the basic competitive principle of civil service and reduce it to little value. It might easily open the door of abuse by the administrators, and close the door of opportunity provided by the law to those individuals meeting or willing to meet the specifications prescribed by the legislature.

The law nowhere authorizes or permits the use of lists of eligibles certified for higher grades in the making of appointments to vacancies arising in lower grades. The assumption of such an authority would in effect be to exercise the power of reducing an individual from the higher grade for which he is qualified to a lower grade than that for which he filed his application and was examined. Neither by direct citation nor by implication, can this power be read into the law. Had the General Assembly intended such a result to be accomplished, it would have so specifically provided in the law. Under such an assumption of power, the competitive feature in civil service would become nullified; favoritism in selection would be a constant threat; interchangeability of lists would be entrusted to individual discretion; and appointments thereunder would assume a haphazard distribution. It is needless to point out how such a departure might well jeopardize the rights of an individual appearing on a list of eligibles to be considered three times when vacancies are to be filled; or the prejudice that might occur to the promotional opportunities of employes in positions; or the serious effect it might have on the seniority rights or service ratings of such an employe. These and many other possibilities might well produce problems in personnel administration of serious and unpredictable proportions. All of these would be violative of the legislative mandate.

It is our opinion, and you are, therefore, so advised, that, other than as to promotions, you have no authority to make civil service appointments in a grade of employment for which the list of eligibles has been exhausted by

appointing persons whose names appear on other lists of eligibles of a higher grade and class than that grade to which the appointment is to be made.